UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LINDSAY INGRAM,

    Plaintiff,

v.   Case No. 8:21-cv-2274-CPT

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

    Defendant.
_____/

**O R D E R**

    The Plaintiff seeks judicial review of the Commissioner's decision denying her claim for disabled adult-child insurance benefits (CIB). As explained below, a claimant seeking CIB must, among other things, have a disability that commenced before the claimant attained the age of twenty-two. For the reasons discussed below, the Commissioner's denial of the Plaintiff's CIB claim is reversed, and the case is remanded.

I.

    The Plaintiff was born in 1988, has an eighth-grade education, and has no past relevant work experience. (R. 27, 42, 60). In March 2019, the Plaintiff applied for CIB, alleging disability as of October 2017 due to anxiety, depression, bipolar disorder,

obsessive-compulsive disorder (OCD), and attention deficit hyperactivity disorder (ADHD). (R. 60–61). The Plaintiff later revised her alleged onset date so that it matched the date of her eighteenth birthday (i.e., November 25, 2006). (R. 15, 39, 61). The Social Security Administration (SSA) denied the Plaintiff's application both initially and on reconsideration. (R. 73, 103).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in January 2021. (R. 37–59). The Plaintiff was represented by counsel at that proceeding and testified on her own behalf. (R. 39, 41–52). A vocational expert (VE) also testified. (R. 53–59).

In a decision issued in January 2021, the ALJ determined that the Plaintiff had not turned twenty-two years old as of her alleged amended onset date and that she had not engaged in any substantial gainful activity since that date. (R. 15–28). The ALJ also determined that prior to attaining the age of twenty-two, the Plaintiff (1) had the severe impairments of OCD, ADHD, bipolar disorder, depressive disorder, anxiety disorder, eating disorder, personality disorder, substance abuse, and post-traumatic stress disorder; (2) did not, however, have an impairment or combination of impairments that met or medically equaled any of the listings;[1] (3) had the residual functional capacity (RFC) to perform a full range of work at all exertional levels but

---

[1] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1 and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity. 20 C.F.R. § 404.1520(a)(4). When a claimant's affliction matches an impairment on the list, the claimant is automatically entitled to disability benefits. *Id.*; *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

with certain nonexertional limitations, including—of relevance here—that the Plaintiff could engage in unskilled work with a Specific Vocational Preparation (SVP)[2] of one or two and a General Educational Development (GED) reasoning rating of one or two,[3] and could not perform fast-paced production or fast-paced quota work (such as on assembly lines); (4) had no past relevant work; and (5) based upon the VE's testimony, could engage in jobs that exist in significant numbers in the national economy prior to reaching the age of twenty-two. *Id.* In light of these findings, the ALJ concluded that the Plaintiff had not been under a disability during the relevant period. (R. 28).

The Appeals Council denied the Plaintiff's request for review. (R. 1–6). Accordingly, the ALJ's decision became the final decision of the Commissioner. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021) (citation omitted).

II.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of

---

[2] An SVP level is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." U.S. Dep't of Labor, Dictionary of Occupational Titles (DOT), App'x C, Components of the Definition Trailer, § II, 1991 WL 688702 (G.P.O. 4th ed. 1991).

[3] "The GED Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development." *Williams v. Comm'r of Soc. Sec.*, 2022 WL 4354850, at *4 (M.D. Fla. Sept. 20, 2022) (quoting DOT, App'x C, 1991 WL 688702). Pertinent here is the GED reasoning division, "which ranges from a rating of one to six and measures a claimant's ability to engage in certain basic functions related to education and requires the claimant to be able to carry out instructions and perform[ ] mental tasks." *Id.*

not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[4] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

A claimant applying for CIB must satisfy several criteria, including being over eighteen years old, unmarried, and having "a disability that began before [the claimant] became [twenty-two] years old." 20 C.F.R. § 404.350(a)(1)–(5). To ascertain whether a claimant seeking CIB is disabled, the Commissioner employs the same five-step sequential evaluation process applicable to other disability benefits programs. *Walker v. Comm'r of Soc. Sec.*, 2023 WL 2473440, at *2 (M.D. Fla. Mar. 13, 2023) (citing *Mainville v. Comm'r of Soc. Sec.*, 2019 WL 3225579, at *1 (M.D. Fla. July 2, 2019), *report and recommendation adopted*, 2019 WL 3219895 (M.D. Fla. July 17, 2019)).

Pursuant to this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals any of the listings; (4) has the RFC to engage in her past relevant work; and (5) can perform other occupations in the national economy given her RFC, age, education, and work experience. *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing *Phillips v. Barnhart*, 357 F.3d

---

[4] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

4

1232, 1237 (11th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)). Although the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove she cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the claimant's disability application after a hearing. 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is buttressed by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and citations omitted). In considering whether substantial evidence bolsters the Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or make credibility determinations. *Viverette*, 13 F.4th at 1314 (citation omitted);

*Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)). While a court will defer to the Commissioner's factual findings, it will not afford such deference to her legal conclusions. *Viverette*, 13 F.4th at 1313–14; *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

### III.

The Plaintiff raises three challenges on appeal, all of which relate to the ALJ's step four analysis: (1) the ALJ did not properly evaluate the medical source opinion evidence, including—of significance here—an assessment rendered by a psychologist, Dr. Rachel Fazio; (2) the ALJ erroneously discounted the Plaintiff's subjective complaints of pain and other symptoms; and (3) the ALJ's RFC determination is not supported by substantial evidence. (Doc. 24 at 19–33, 42–45, 50–51; Doc. 27).[5] After careful review of the parties' submissions and the record, the Court finds that the Plaintiff's first challenge has merit and alone warrants remand.

### A.

As noted above, the ALJ's task at step four is to determine a claimant's RFC and her ability to engage in her past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. To do so, the ALJ must decide given all the pertinent evidence before him what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. *Id*. In making this

---

[5] The Court has reordered the Plaintiff's challenges to facilitate its disposition of same.

finding, an ALJ must consider all medical opinions and prior administrative medical findings in a claimant's case record, together with the other relevant evidence. *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1527(b)); 20 C.F.R. § 404.1513a(b)(1).

A medical opinion is a statement from a physician or other acceptable medical source concerning what a claimant may be able to do despite her impairments; whether the claimant is limited in her capacity to perform various work activities; and whether the claimant can see, hear, or use her other senses or "adapt to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. § 404.1513(a)(2). A prior administrative medical finding, on the other hand, is a finding that pertains to "a medical issue made by [the SSA's f]ederal and [s]tate agency medical and psychological consultants at a prior level of review[,]" but that does not constitute an "ultimate determination about whether [the claimant is] disabled[.]" 20 C.F.R. § 404.1513(a)(5).

The Regulations governing the evaluation of medical evidence, including medical opinions and prior administrative medical findings, were amended for disability applications filed on or after March 27, 2017, as this one was. 20 C.F.R. § 404.1520c; *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 n.4 (11th Cir. 2021). The ALJ now determines the persuasiveness of a medical opinion and prior administrative medical finding instead of generally basing their weight on the source or consultant who offered the opinion or finding. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c. In conducting this analysis, an ALJ must consider the

7

following five factors: (1) supportability; (2) consistency; (3) the source or consultant's relationship with the claimant; (4) the source or consultant's area of specialization; and (5) any other pertinent factors "that tend to support or contradict a medical opinion" or a prior administrative medical finding, such as whether the source or consultant is familiar with the other record evidence or has "an understanding of [the SSA's] disability program's policies and evidentiary requirements." *Id.* § 404.1520c(c); *see also Nixon v. Kijakazi*, 2021 WL 4146295, at *3 (M.D. Fla. Sept. 13, 2021) (citation omitted).

Of these factors, supportability and consistency are the most important. 20 C.F.R. § 404.1520c(b)(2); *Nixon*, 2021 WL 4146295, at *3 (citation omitted). Supportability addresses the extent to which a medical source or consultant has articulated record evidence bolstering her own opinion or finding, while consistency deals with whether a medical source or consultant's opinion or finding conforms to other evidence in the record. 20 C.F.R. §§ 404.1520c(c)(1), 404.1520c(c)(2); *Vachon v. Comm'r of Soc. Sec.*, 2022 WL 458604, at *5 (M.D. Fla. Feb. 15, 2022); *Barber v. Comm'r of Soc. Sec.*, 2021 WL 3857562, at *3 (M.D. Fla. Aug. 30, 2021) (citation omitted). The amended Regulations require an ALJ to discuss supportability and consistency but do not obligate him to state how he evaluated the other three factors. 20 C.F.R. § 404.1520c(b)(2); *Freyhagen v. Comm'r of Soc. Sec. Admin.*, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citation omitted). In the end, the amended Regulations—like their predecessors—do not preclude an ALJ from rejecting any medical opinion or prior administrative medical finding if the evidence buttresses a contrary

8

assessment. *Freyhagen*, 2019 WL 4686800, at *2 (citing *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (per curiam); *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam)).

B.

While the Plaintiff's first challenge has a number of aspects, the focus of the Court's analysis here is on that portion of the Plaintiff's challenge pertaining to the opinion of Dr. Fazio, who conducted a clinical interview of the Plaintiff in March 2015. (R. 429–36). In connection with that interview, Dr. Fazio performed neuropsychological testing of the Plaintiff and also reviewed and referenced the Plaintiff's psychiatric history, employment history, academic/social history, and developmental/medical history. *Id.* Dr. Fazio's evaluation revealed, *inter alia*, that the Plaintiff "may have difficulties with daily functioning in terms of financial activities;" possessed a processing speed in the "borderline range between being low average and mildly impaired," such that she needed "at least 1.5 to 2 times the recommended amount of time for completion of each task;" and that information was "best presented to [the Plaintiff] in a verbal format." *Id.*

In his decision, the ALJ rendered the following assessment of Dr. Fazio's determinations:

> The undersigned was not persuaded by the opinion[ ] of [Dr. Fazio]. Her recommendations were predicated on clinical findings and objective evidence produced nearly five years after the [Plaintiff's] attainment of age [twenty-two]. As her opinion[ was] not based upon objective clinical evidence produced during the period in question, I find her opinion[ ]

9

inadequately supported with respect to the period in question, and unpersuasive.

(R. 26) (internal citations omitted).

The Plaintiff now argues that the ALJ's rejection of Dr. Fazio's findings solely on the grounds that the objective evidence and Dr. Fazio's resulting opinion were obtained after the pertinent time frame is not sufficiently supported given that nothing in the record shows that the Plaintiff's impairments were new. (Doc. 24 at 29–30). To buttress her argument, the Plaintiff relies on *Boyd v. Heckler*, 704 F.2d 1207 (11th Cir. 1983), *superseded by statute on other grounds as recognized in Elam v. R.R. Ret. Bd.*, 921 F.2d 1210 (11th Cir. 1991), in which the Eleventh Circuit "adopt[ed] the position of the Second and Seventh Circuits that a treating physician's opinion is still entitled to significant weight notwithstanding that [the physician] did not treat the claimant until after the relevant determination date." *Id.* at 1211 (citing *Dousewicz v. Harris*, 646 F.2d 771, 774 (2d Cir. 1981); *Stark v. Weinberger*, 497 F.2d 1092, 1097 (7th Cir. 1974)).

The Commissioner counters that the Plaintiff's reliance on *Boyd* is misplaced because it was decided under the old Regulations and cites *Walker v. Soc. Sec. Admin., Comm'r*, 2022 WL 1022730, at *2 (11th Cir. Apr. 5, 2022) (per curiam) to bolster her contention. (Doc. 24 at 40). In *Walker*, the Eleventh Circuit concluded that "an unpublished case from 2015" which dealt with a matter under the prior version of the Regulations no longer applied because the ALJ was not required under the new Regulations to utilize the same analytical framework. *Id.* Upon due consideration of

10

the parties' competing positions, the Court finds that the Plaintiff has the better argument.

To begin, the Eleventh Circuit's decision in *Walker* does not stand for the proposition that every case issued before the amended Regulations—such as *Boyd*—now lacks any precedential value. Indeed, since the post-2017 amendments, a number of courts in this District have relied on *Boyd* in recognizing that a retrospective opinion may serve as evidence of a disability. *See, e.g., Russell v. Comm'r of Soc. Sec.*, 2023 WL 1400623, at *2 (M.D. Fla. Jan. 31, 2023) ("The fact that [the physician] did not examine [the c]laimant until well after the relevant period does not appear to exempt [the physician's] medical opinion from being considered in accordance with [the applicable regulation]."); *Hernandez v. Comm'r of Soc. Sec.*, 2022 WL 10208157, at *2 (M.D. Fla. May 12, 2022) (finding reversible error under the post-2017 Regulations where it was unclear whether the ALJ considered a retrospective opinion to be corroborated by evidence within the pertinent time frame) (citation omitted); *Moliere v. Comm'r of Soc. Sec.*, 2021 WL 8939508, at *3–4 (M.D. Fla. Nov. 30, 2021) (ruling that the ALJ improperly disregarded a one-time examining physician's opinion simply because it was issued more than five years after the claimant's date last insured and—according to the ALJ—was thus not relevant to the period at issue).

Here, the ALJ did not meaningfully address whether Dr. Fazio's opinion was retrospective to the disability period, despite the fact that—as discussed above—Dr. Fazio reviewed and referenced the Plaintiff's psychiatric history, employment history, academic/social history, and developmental/medical history. This was error. *See*

11

*Russell*, 2023 WL 1400623, at *2; *Hernandez*, 2022 WL 10208157, at *2; *Moliere*, 2021 WL 8939508, at *4.

The ALJ's consideration of Dr. Fazio's opinion is flawed in another aspect as well.  Nowhere in the ALJ's analysis of Dr. Fazio's findings did he properly evaluate one of the most important persuasiveness factors, consistency.  At most, the ALJ's determination that Dr. Fazio's assessments were "inadequately supported with respect to the period in question" (R. 26) could be interpreted as relating to the matter of supportability.

Given these deficiencies, the Court cannot engage in a meaningful review of this material component of the ALJ's decision.  *Hanna v. Astrue*, 395 F. App'x 634, 636 (11th Cir. 2010) (per curiam) ("The ALJ must state the grounds for his decision with clarity to enable [a court] to conduct meaningful review.").  As a result, reversal and remand are required.  *Brown v. Comm'r of Soc. Sec.*, 2021 WL 2917562, at *4 (M.D. Fla. July 12, 2021) (noting that to the extent medical sources offered opinions on a claimant's functional limitations, the new Regulations mandate the ALJ "consider those opinions, assess their persuasiveness, and *explain* his decision, particularly with respect to supportability and consistency," and that an ALJ's failure to do so "requires reversal and remand") (collecting cases); *Spaar v. Kijakazi*, 2021 WL 6498838, at *4 (S.D. Ga. Dec. 28, 2021) ("The ALJ is completely silent on the 'supportability' of [a medical] opinion, which is plainly an error, and requires remand."), *report and recommendation adopted*, 2022 WL 141613 (M.D. Fla. June 14, 2022); *Works v. Saul*, 2021 WL 690126, at *15 (N.D. Ala. Feb. 23, 2021) (concluding that reversal and

12

remand were necessary where an ALJ only stated that a medical opinion was "somewhat consistent with the entire record" because the new Regulations "require[ ] more than a conclusory statement, at least with respect to the supportability and consistency factors[,] so that a reviewing court can make a meaningful assessment of a challenge to an ALJ's evaluation of the persuasiveness of various medical opinions").

The Commissioner's efforts to avoid this conclusion are unavailing. The Commissioner first argues that aside from Dr. Fazio's recommendation that the Plaintiff be afforded one-and-a-half to two times the recommended amount of time for completing each task, Dr. Fazio did not otherwise propound any "medical opinions" as defined under the Regulations because she included "qualifying language." (Doc. 24 at 38) (citing *DeJesus v. Comm'r of Soc. Sec.*, 2022 WL 833677, at *7 (M.D. Fla. Mar. 21, 2022)). By way of example, the Commissioner highlights Dr. Fazio's assertions that an "effort should be made to repeat information to [the] Plaintiff and/or have her repeat it back to the person who initially presented to her to increase her retention" and that "working quite closely with a vocational counselor . . . may be necessary." (Doc. 24 at 38) (citing R. 436).

The problem with the Commissioner's argument is that the Court can only rely on what the ALJ has set forth in his decision, not on post-hoc rationalizations offered by the Commissioner on appeal. *Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 872 (11th Cir. 2012) (per curiam) ("We cannot affirm based on a post hoc rationale that 'might have supported the ALJ's conclusion.'") (quoting *Owens v. Heckler*, 748 F.2d

13

1511, 1516 (11th Cir. 1984) (per curiam)); *Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 733 (11th Cir. 2011) (per curiam) (same). And here, the ALJ analyzed Dr. Fazio's assessments without ever mentioning that those determinations did not constitute a medical opinion. Instead, it appears the ALJ treated them as such, at least in part. The Court is therefore disinclined to adopt the Commissioner's belated argument to the contrary. *See Brown v. Comm'r of Soc. Sec.*, 2021 WL 2917562, at * 4 (M.D. Fla. July 12, 2021) (rejecting the Commissioner's assertion that the ALJ did not consider a physician's assessment to be a medical opinion on the ground that it was a post-hoc rationalization aimed at explaining away the ALJ's failure to address the opinion).

The Commissioner alternatively contends that any failure by the ALJ to provide clearly articulated and sufficiently supported reasons for discounting Dr. Fazio's opinion was harmless. Specifically, the Commissioner maintains that the ALJ adequately accounted for Dr. Fazio's determination that it would take the Plaintiff up to twice as long to complete tasks by precluding the Plaintiff from engaging in any fast-paced production work and limiting her to unskilled work with both an SVP of one or two and a GED reasoning level of one or two. (Doc. 24 at 39). The Commissioner's explanation, however, lacks citation to any supporting legal authority and is therefore waived. *Battle v. Comm'r, Soc. Soc. Admin.*, 787 F. App'x 686, 687 (11th Cir. 2019) (per curiam) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.") (quoting *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998)); *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (per curiam) (stating that a plaintiff waived an

argument "because he did not elaborate on [the] claim or provide citation to authority about [it]") (citing *Cheffer v. Reno*, 55 F.3d 1517, 1519 n.1 (11th Cir. 1995)). Even were that not the case, the Commissioner does not show how Dr. Fazio's finding that the Plaintiff needed up to twice the amount of time to accomplish typical job responsibilities could be accommodated by a prohibition against fast-paced production work.

Based upon the foregoing, the Court need not resolve the Plaintiff's remaining challenges. *See McClurkin v. Social Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (finding there was no need to analyze any additional issues because the case was reversed due to other dispositive errors); *Demenech v. Sec'y of Dep't of Health & Hum. Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (declining to address the claimant's remaining arguments due to the conclusions reached in remanding the action); *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (stating that where remand is required, it may be unnecessary to review other claims raised) (citations omitted). On remand, however, the ALJ must consider all of the record evidence in accordance with the governing case law and the applicable regulatory provisions in evaluating the Plaintiff's impairments. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (stating that the ALJ must reassess the entire record on remand).

## IV.

In light of all the above, it is hereby ORDERED:

1. The Commissioner's decision is reversed, and the case is remanded for further proceedings before the Commissioner consistent with this Order.

2. The Clerk of Court is directed to enter Judgment in the Plaintiff's favor and to close the case.

SO ORDERED in Tampa, Florida, this 29th day of March 2023.

*Christopher P. Tuite*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record